HEARD NOVEMBER TERM, 1873.

## CONVERSE *vs.* EVINS.

An action cannot be maintained upon a sealed note given in 1863 for Confederate States bonds—the consideration being illegal, the note is void.

BEFORE MOSES, J., AT SPARTANBURG, APRIL TERM, 1873.

Action by D. E. Converse, plaintiff, against John H. Evins, as administrator of S. H. Evins, deceased, defendant, upon a sealed note as follows:

"Three years after a treaty of peace between the Confederate States and the United States, or cessation of hostilities for the same time between the same, I promise to pay D. E. Converse, or order, the sum of three thousand dollars in specie or bills of then specie paying banks; and I herein pledge myself to pay this when due, notwithstanding any Act of Congress or Legislature that might excuse me from so doing, either as to time or otherwise, for value received; as witness my hand and seal, this 17th day of October, 1863. "S. N. EVINS. [SEAL.]

" Witness:
"J. BOMAR,
"A. H. TWICHELL.

The defense was that the note was given for Confederate States eight per cent. bonds, sold or loaned by the plaintiff to the intestate; and the fact that such was the consideration of the note was proved at the trial on the part of the defendant.

The counsel for the defense requested His Honor the presiding Judge to instruct the jury, *inter alia,* that

" If, in point of fact, the note sued on was given for the pur-
chase or loan of Confederate bonds, then, in law, the note was illegal
and void."

His Honor declined so to charge, and the defendant excepted.

Under the instructions of His Honor, the jury found for the
plaintiff $4,001.56.

A motion for a new trial was made and overruled, and defendant
appealed on the ground of error in the refusal to charge as above
stated.

*Duncan & Clevelan, Simpson,* for appellant, relied upon *Hananer*
vs. *Woodruff,* 15 Wal., 437, as decisive of the point made by the
appeal.

*Bobo & Carlisle,* contra :

The contract was made by parties able to contract, was reduced
to writing with care, and fully explains itself.

In the defense it is contended that there was no consideration
passed between the parties.

Were Confederate bonds a consideration ?

The bonds were in circulation as money and for investment,
bearing eight per cent. interest. The intestate had the use of them
during the war, and for three years after. By that contract that
difference, in his favor, was, in the judgment of the intestate, full
compensation for him to risk the result of the war—had it been
successful—then he would have got eight per cent. in the way of
interest for five years and his money back, and the plaintiff
prefered to let him have it—hence the trade.

This Court has recognized investments in these bonds.—*Hinton*
vs. *Kenneday,* 3 S. C., 457, 490 ; *Cureton* vs. *Watson,* 3 S. C., 451.

Confederate notes were given for the bonds without stint, and
such investments were actually sought. It has not been denied
but that they were a good consideration—both emanated from the
same authority. The United States and Confederate States were at
war. The latter, for the time being, were independent, and had a
lawful right to do anything that they deemed necessary to carry on
the war and to sustain their people.—Vattel, 425-7, §§ 293-5 ;
*Morgan* vs. *Keenan,* 1 S. C., 327. The cases of *Texas* vs. *White*
and *Thorington* vs. *Smith* sustained this view.

*Hananer* vs. *Woodruff* decided that *a State* in rebellion could

not issue bonds. The *State* never stood in an independent relation to the United States, and their bonds were issued expressly in aid of the war. Bills issued by the Bank of the State, during the war, are held good for payment of taxes.

This, we insist, sustains the right of the Confederate States to issue the bonds. But suppose we should be mistaken in this, and that the bonds were illegally issued, does that prove that this contract was in aid of the war, and, therefore, void? The bonds were in actual being. Neither of these parties issued them, they found them in circulation. It did not aid the war to change them out of the hands of Converse and put them in the hands of Evins; they were in circulation, and were the legitimate subjects of traffic.— *Random* vs. *Toby*, 11 How., 398; *Naffa* vs. *Crawford*, 3 Law Times, 301, and cases cited.

The contract was entered into with care and precision, to be paid in specie, and with a pledge to pay, notwithstanding any Act of Congress or Legislature that would excuse him. There was no pretence that both powers should continue to exist; on the contrary, it provides for a treaty of peace or *cessation of hostilities*— had it stopped with "treaty of peace," the argument may have been worth something, but the other contingency was certain to happen, and did happen, and was, we contend, inserted to avoid any contingency.

The paper sued on is sealed and payable in specie. The seal implies a consideration, and the word *specie* indicates what kind of dollars were meant.—*Bobo* vs. *Goss*, 1 S. C., 162; *Browson* vs. *Rhodes*, 7 Wallace, 229; *Briten* vs. *Harwitz*, 7 Wallace, 258.

Jan. 28, 1874. The opinion of the Court was delivered by

MOSES, C. J. The decision in *Hananer* vs. *Woodruff*, 15 Wallace, 439, is so conclusive of the case before us that our own convictions must yield to its authority. It declares that a consideration formed on Confederate bonds is illegal and void under the Constitution and laws of the United States. On a question involving these, the authority of the Supreme Court is binding, not only on every Court, but on every department of the General Government and the several States. Our duty is to follow its judgment whenever rendered in cases which, in its view, are to be controlled and determined by that instrument, or the laws of Congress made in conformity with it. So holding, we have no alternative but to

grant the motion, as the appeal proceeds upon the same principle which governed the Supreme Court of the United States in the case referred to.

*Wright,* A. J., and *Willard,* A. J., concurred.